UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS COUNTY AND DISTRICT RETIREMENT SYSTEM, | § § § § § | |
| *Plaintiff*, | | |
| V. | § § | CAUSE NO. 1:13-cv-370 |
| WEXFORD SPECTRUM FUND, L.P., WEXFORD SPECTRUM ADVISORS, L.P., WEXFORD CAPITAL, L.P., and WEXFORD GP, L.L.C., | § § § § § § § | |
| *Defendants*. | § | |

**NOTICE OF REMOVAL**

Defendants Wexford Spectrum Advisors, L.P. ("Spectrum Advisors"), Wexford Capital, LP ("Wexford"), and Wexford GP, LLC ("Wexford GP", and collectively with Spectrum Advisors and Wexford, "Defendants") hereby remove the state-court action entitled *Texas County and District Retirement System v. Wexford Spectrum Fund, L.P., et al.*, Cause No. D-1-GN-13-001141, in the 261st District Court of Travis County, Texas. Removal is warranted under 28 U.S.C. § 1441(b) because this Court has jurisdiction over this action under 28 U.S.C. § 1332. In support of removal, Defendants state as follows:

1. Plaintiff filed and served its Original Petition on April 5, 2013 in the 261st District Court in Travis County, Texas, which is located within the Western District of Texas.

2. Plaintiff, the Texas County and District Retirement System ("TCDRS" or "Plaintiff") is a sophisticated investor that manages a $19.7 billion portfolio and targets approximately $5 billion dollars of that for investment in hedge funds. TCDRS's claims are based on an Oct. 17, 2012 letter, in which Wexford advised TCDRS and the other limited partners in Wexford Spectrum Fund, LP ("Spectrum Fund" or "Partnership") that several Partnership investments had been designated as illiquid investments under Sec. 3.2(a)(iv) of the Partnership Agreement. Pursuant to that letter, TCDRS and the other limited partners were given the choice either (a) to hold their pro rata share of such investments in an illiquid "side pocket" account, or (b) to sell their interest in such investments to the General Partner (Spectrum Advisors), the Investment Manager (Wexford) or one of their affiliates. Unlike some other limited partners, TCDRS ignored that Wexford "**strongly recommend[ed] that all Limited Partners**" elect to hold their pro rata share in a side pocket, and chose instead to sell its interest in the investments at issue. **Exhibit 2, Tab 4** (emphasis in original). TCDRS now alleges that representations in the Oct. 17 letter regarding the investments were false and that Wexford

1

withheld material information. TCDRS asserts eight causes of action against Wexford, Wexford GP, Spectrum Advisors and the Partnership. However, it is clear that even assuming the truth of all of the facts in the Petition, TCDRS has cannot recover on its claims against the Partnership.

3. Special exceptions and an answer to Plaintiffs' Original Petition in the 261st District Court of Travis County, Texas were timely filed on April 29, 2013. Defendants filed this Notice of Removal within thirty days of service. None of the properly joined Defendants is a citizen of the state of Texas, where this action was brought, and all defendants named and served in this lawsuit consent to removal. **Exhibit 2**.

4. No previous application has been made for the relief requested herein. Copies of all process, pleadings, orders, the state court docket sheet, and a list of all counsel of record are attached collectively as **Exhibit 1**, and a copy of this Notice of Removal is being served to Plaintiff's counsel and filed with the County Clerk for Travis County, Texas pursuant to 28 U.S.C. § 1446(d).

## I. <u>Subject-Matter Jurisdiction Exists Pursuant to 28 U.S.C. §§ 1332 and 1441</u>.

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. Complete Diversity of Citizenship.

6. As set forth in Section A(1), Plaintiff is a citizen of the state of Texas for the purpose of diversity jurisdiction.

7. Defendants Wexford, Spectrum Advisors and Wexford GP are each either a limited partnership or a limited liability company. For diversity purposes, the citizenship of a limited partnership or limited liability company is based upon the citizenship of each of its partners or members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).

As set forth in **Exhibit 2**, each of the partners or members of Wexford, Spectrum Advisors and Wexford GP are citizens of Connecticut or New York, and thus for the purpose of diversity, Wexford, Spectrum Advisors and Wexford GP are citizens of Connecticut and New York.

8.  There is complete diversity between Plaintiff and Wexford, Spectrum Advisors, and Wexford GP.

9.  TCDRS does not allege that any current partner of the Partnership is a citizen of Texas. However, even if TCDRS had so alleged, the Partnership is an improperly joined defendant, whose citizenship must be disregarded by the Court. *See* 28 U.S.C. § 1441(b)(2); *see also Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004). In analyzing the citizenship of the parties for the purposes of diversity removal, only the citizenship of parties "properly joined" is to be considered. 28 U.S.C. § 1441(b)(2); *Smallwood*, 385 F.3d at 572. "The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood*, 385 F.3d at 573. A defendant satisfies this test by "demonstrat[ing] that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* However, "a mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* at 573 n.9 (citation and internal quotation marks omitted). As set forth in Section A(2), there is no possibility that Plaintiff can recover on its claims against the Partnership, and therefore its citizenship must be disregarded for the purpose of determining diversity jurisdiction.

### 1.     TCRDS is a Texas citizen for the purpose of diversity jurisdiction.

10. Generally, if a party to a suit is "an agency which is merely an alter ego of the state, federal jurisdiction is lacking." *Id.* However, the Fifth Circuit has held that "a state

3

989025

agency may, under certain circumstances, be considered a legal entity separate from the state for purposes of diversity jurisdiction." *Tradigrain v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir.1983). If the agency's status as an alter ego is unclear, the Court is to "look to any and all available sources for guidance." *Id.* Specifically, the Court should consider

> whether the agency has been granted the right to hold and use property, whether it has the express authority to sue and be sued in its corporate name, the extent of its independent management authority, and "a factor that subsumes all others" the treatment of the agency by the state courts. *Id.*

11.   Other relevant factors can include: (1) whether the state is responsible for the agency's debt; (2) whether the agency is primarily concerned with local, as opposed to statewide problems; and (3) the degree of general financial autonomy of the agency. *Id.* A court "must balance the foregoing factors without losing sight of 'the primary question involved,' specifically, whether the state is the real party in interest." *Id.* at 1333.

12.   In *Texas Dep't of Housing and Community Affairs v. Verex Assurance, Inc.*, the Fifth Circuit applied the *Tradigrain* factors and held the Texas Department of Housing and Community Affairs ("THA") was an independent agency of the state for diversity purposes even though THA's enabling statute provided that THA was "a public and official governmental agency of the state," and that the THA's actions "shall constitute and be deemed and held to be an essential public and official governmental function and purpose of the state." 68 F.3d 922, 927-28 (5th Cir. 1995) (quoting Tex.Rev.Civ.Stat.Ann., Art. 1269*l*-6 § 3(a)), *overruled on other grounds by Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 413 n.19 (5th Cir. 2009). Observing that such language merely confirmed that THA was an agency of the state, the Fifth Circuit then applied the *Tradigrain* factors to determine whether THA acted as an *independent* agency for the purpose of diversity jurisdiction. *Id.* at 928. The Fifth Circuit noted that THA "had the authority to hold and use property, the authority to sue and be sued in its corporate name, the power to

4

enter into its own contracts, and the power to make its own hiring decisions" as well as the power to "manag[e] its own finances and [be] responsible for its own debts." *Id.* Based on these factors, the Fifth Circuit found that THA had "relative independence in controlling its operations and managing its finances," and consequently "h[e]ld that the state was not the real party in interest, and that THA is indeed a citizen for purposes of our diversity jurisdiction." *Id.*

13.  Here, TCDRS's enabling statute is devoid of any statement of "official" government function or purpose. Rather, the statute merely states that TCDRS is "a government entity," and then grants TCDRS as much autonomy, if not more, as the enabling statute at issue in *Verex*. The statute gives TCDRS all "the powers, privileges, and immunities of a corporation," including authority to hold and use property. *Id.* §§ 841.002-841.004. In fact, under the statute, TCDRS holds all of its assets in trust for systems beneficiaries, not the State of Texas, and such assets "may not be diverted." *Id.* § 841.002. TCDRS can sue (as it did in this case), and be sued in its corporate name. *See id.* §§ 841.003 & 841.0051. TCDRS has the power to enter into its own contracts. *See id.* § 841.004(a); *see also* Petition at ¶ 17 (alleging TCDRS "entered into two agreements with the Fund and its affiliates.") Although TCDRS is managed by a board of trustees appointed by the governor, the board is given managerial autonomy over the administration of the system. *See id.* §§ 845.102-103. Perhaps most importantly, TCDRS manages its own finances and is responsible for its own debts. In fact, TCDRS repeatedly touts that autonomy on its website, emphasizing that "**[w]e don't receive state funding**" and "**[w]e do NOT receive funding from the State of Texas.**" (emphasis by TCDRS).[1] In short, the *Tradigrain* factors with which the Fifth Circuit found that THA was a citizen of Texas for the

---

[1] *See* https://www.tcdrs.org/ABOUTUS/Pages/Governance.aspx & https://www.tcdrs.org/ABOUTUS/Pages/WhoIsTCDRS.aspx (last visited April 30, 2013).

purpose of diversity in *Verex* apply with even greater force here.[2] TCDRS operates not as an alter ego of the state, but as a separate and distinct independent agency, and is a citizen of Texas for the purpose of diversity jurisdiction. *Tradigrain*, 701 F.2d at 1132; *Verex*, 68 F.3d at 928.

### 2. The Partnership was improperly joined and must be disregarded for the purpose of diversity jurisdiction.

14. TCDRS does not allege that it is currently a limited partner of the Partnership, nor does it allege the Partnership is a citizen of Texas. However, even if TCDRS made those allegations, such citizenship should be disregarded because TCDRS has no possibility of recovery against the Partnership. 28 U.S.C. § 1441(b)(2); *Smallwood*, 385 F.3d at 572.

15. In the Fifth Circuit, the Court may resolve the issue of improper joinder by either conducting an analysis similar to that of Fed.R.Civ.P 12(b)(6), or, in the Court's discretion, performing a summary inquiry by "piercing the pleadings." *Smallwood*, 385 F.3d at 573. Piercing the pleadings is appropriate when the plaintiff has stated a claim, but has misstated or omitted discrete facts essential to determining the propriety of joinder. *Id.*

16. TCDRS asserts the following eight causes of action: (1) fraud by misrepresentation and/or omission, (2) statutory fraud, (3) breach of fiduciary duty, (4) aiding and abetting breach of fiduciary duty, (5) breach of contract based on Section 3.2(a)(iv) of the Partnership Agreement, (6) breach of contract in respect to a specific provision of the Side Letter, (7) breach of an implied covenant of good faith and fair dealing; and (8) negligent misrepresentation. While the Petition is not a model of clarity, one thing is certain: TCDRS does not identify any statement, act, or omission by the Partnership itself in respect to any of its

---

[2] Similarly, in the few reported cases in which TCDRS is a party, Texas courts have not treated TCDRS as the alter ego of the state. *Compare Schaefer v. Tex. Cty. & Dist. Retirement System*, 2001 WL 578551 at *7 (Tex.App.—Austin May 31, 2001) (analyzing equitable estoppel claim against TCDRS under general principals) *with Tex. Dept. of Transportation v. A.P.I. Pipe and Supply, LLC*, --- S.W.3d --- 2013 WL 1365936 (Tex. April 5, 2013) (noting, in Texas Dept. of Transportation case, that equitable estoppel is "a doctrine inapplicable against the government" except when necessary to "prevent manifest injustice" and "no governmental function can be impaired.")

claims. While TCDRS does not assert all of these claims against the Partnership, to counter the vague generality of the Petition, all eight causes of action are addressed below:

17.     <u>Sixth Cause of Action</u>: TCDRS's claim for breach of the Side Letter is addressed first because TCDRS's pleadings show that the Side Letter is only document to which the Partnership is a party. Petition, ¶ 21. However, TCDRS has no standing to assert its claim based on the Side Letter, because the provision on which TCDRS sues does not create an obligation to TCDRS, but rather to the Partnership as a whole. Petition, ¶ 46 (alleging the Partnership breached an obligation to ensure that certain transactions were *"fair and equitable to the Partnership."*) (emphasis by TCDRS); *see also* **Exhibit 2, Tab 2 ¶ 15**. TCDRS fails to present any nonconclusory allegation that any transaction was not fair and equitable to the Partnership, and if it did, TCDRS has no standing to assert the claim directly since any harm resulting from such a breach would be felt by the Partnership. *Gerber v. EPE Holdings, LLC*, 2013 WL 209658 at *12 (Del.Ch. Jan. 18, 2013) (holding limited partner lacked standing to bring breach of contract claim directly when alleged harm was felt by limited partnership as a whole) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)).[3]

18.     <u>Fifth Cause of Action</u>: TCDRS cannot prevail on its claim against the Partnership for breach of on Section 3.2(a)(iv) of the Partnership Agreement. TCDRS fails to allege how the Partnership (or any defendant) breached Section 3.2(a)(iv). More importantly, Section 3.2(a)(iv) does not impose any obligation on the Partnership itself, nor is the Partnership even a party to the Partnership Agreement, which is an agreement between the general partner and limited partners. **Exhibit 2, Tab 1**. Consequently, under Delaware law, the Partnership cannot be liable for any

---

[3] TCDRS does not allege that it brings the claim derivatively, and the Petition is devoid of any nonconclusory allegation that the Partnership suffered damages as a result of any transaction at issue.

claimed breach of the Partnership Agreement. *Izquierdo v. Sills*, 2004 WL 2290811 at *8 (Del.Ch. June 29, 2004) (nonparty to a contract "cannot be held liable for any breach of it").

19.     <u>Seventh Cause of Action</u>: Nor can TCDRS recover on its claim for breach of an implied duty of good faith and fair dealing. TCDRS fails to plead, as it must, "a *specific* obligation implied in the contract [and] breach of that obligation." *Metropolitan Life Ins. Co. v. Tremont Group Holdings, Inc.*, 2012 WL 6632681 at *15 (Del.Ch. Dec. 20, 2012) (emphasis in original). A party "cannot base a claim for breach of the implied covenant on conduct authorized in the agreement." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). TCDRS's bare, conclusory pleading provides no basis to infer the Partnership's conduct was not authorized by the Partnership Agreement or Side Letter, or that the Partnership breached a specific, implied obligation that the Partnership and TCDRS would have agreed to had it been anticipated. *See Gerber*, 2013 WL 209658 at * 10-11 (dismissing implied covenant claim based on contract provisions similar to the Partnership Agreement at issue here); *see also In re Encore Energy Partners LP Unitholder Litig.*, 2012 WL 3792997 at * 13 (Del.Ch. Aug. 31, 2012) (same).

20.     <u>First, Second and Eighth Causes of Action</u>: TCDRS cannot prevail against the Partnership on its common law and statutory fraud and negligent misrepresentation claims. As an initial matter, the Petition contains no allegation identifying a misstatement or omission made by the Partnership. The only misstatements alleged were statements by Wexford. Moreover, TCDRS cannot sue the Partnership, since as a limited partner of the Partnership at the time of the

8

acts complained of, TCDRS would in effect be suing itself.[4] Additionally, on October 23, 2012, when making TCDRS's election in respect to the assets at issue, TCDRS's Chief Investment Officer acknowledged, in writing, that TCDRS had "conducted its own independent evaluation and made its own analysis as it deems necessary in order to make its own decision with regard to this Election Form," and that TCDRS had "not relied on any oral or written representations, warranties, or advice of any kind or nature by the Partnership...". **Exhibit 2, Tab 4**. This unequivocal contractual disclaimer of reliance by bars TCDRS's fraud-based and negligent misrepresentation-based claims under both Delaware and Texas law. *See e.g., Abry Partners V LP v. F&W Acquisition LLC*, 891 A.2d 1032, 1056 (Del.Ch. 2006) (party who has contractually disclaimed reliance prohibited from "reneging on its promise"); *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 330 (Tex.App.—Houston [14th Dist.] 2011, no pet.) (upholding disclaimer of reliance and noting parties who "promise they have not relied on [extra-contractual] statements ... should be held to their word") (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008)).

21.   <u>Third Cause of Action</u>:  TCDRS does not assert fiduciary duty-based claims against the Partnership.  If it had, such claims would fail under Delaware law. *See Klig v. Deloitte LLP*, 36 A.3d 785, 798 (Del.Ch. 2011) (limited partnership does not owe fiduciary duty to limited partners).  The lack of a fiduciary duty of the Partnership is also fatal to TCDRS's omission-based fraud and negligent misrepresentation claims (*see* ¶ 20, above), as the alleged duty to disclose set forth in the Petition is expressly tied to an alleged fiduciary duty that the

---

[4] The Partnership is a pass-through entity, meaning its gains and losses are passed through to its limited partners. **Ex. 2, Tab 1** at Section 1.4(c)-(d) ("[F]ormer limited partners shall be liable for the repayment and discharge of all debts and obligations of the Partnership incurred during any period during which they are or were Limited Partners," and as such "all former Limited Partners shall share all losses, liabilities or expenses" suffered by the Partnership proportionally up to their interest in the Partnership. Any judgment against the Partnership would be "collected" from the capital accounts of the Partnership's limited partners—including TCDRS, an absurd result, particularly where TCDRS has not alleged that the Partnership has engaged in any conduct or made any representations sufficient to support any of its claims.

9

989025

Partnership does not owe to TCDRS as a matter of law. *See Metropolitan Life Ins. Co. v. Tremont Group Holdings, Inc.*, 2012 WL 6632681 at *16-17 (Del.Ch. Dec. 20, 2012).

22.     <u>Fourth Cause of Action</u>: TCDRS's aiding and abetting breach of fiduciary duty claim is not asserted against the Partnership. It is asserted only against Wexford GP.

23.     In short, nothing in TCDRS's pleading shows that it has even a "mere theoretical possibility" of recovery against the Partnership. *See Smallwood*, 385 F.3d at 573 n.9. As such, the Partnership has been improperly joined, and complete diversity exists.[5]

## II.     <u>Amount in Controversy</u>

24.     The amount in controversy requirement is met here. Although TCDRS does not specify the exact amount of damages it seeks, TCDRS alleges it lost "millions in investment returns," making it facially apparent TCDRS seeks more than $75,000. Petition at ¶ 23; *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *see also Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

WHEREFORE, Defendants respectfully remove this action from Travis County, Texas, 261st District Court, Cause No. D-1-GN-13-001141, to this Court.

---

[5] The Partnership's improper joinder would be even more apparent if TCDRS did not obfuscate its allegations with generalized group pleading of actions or misstatements by "Defendants." This improper group pleading—essentially a misstatement or omission of discrete facts necessary to determine the propriety of joinder—further justifies piercing the pleadings and concluding that TCDRS has no possibility of recovery against the Partnership. *See Smallwood*, 385 F.3d at 573.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
(512) 495-6300
(512) 474-0731 Fax

By: _____
Stephen E. McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
S. Abraham Kuczaj, III
State Bar No. 24046249
akuczaj@scottdoug.com
John Gasink
State Bar No. 24078547
jgasink@scottdoug.com

ATTORNEYS FOR DEFENDANTS
WEXFORD SPECTRUM ADVISORS, L.P.,
WEXFORD CAPITAL, L.P., and
WEXFORD GP, L.L.C.

11

989025

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on counsel for Plaintiff as indicated below on the 3rd day of May, 2013.

*CM/RRR # 7010 1670 0000 7615 9639*
Jennifer B. Poppe
Alithea Z. Sullivan
Grayson McDaniel
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746

*CM/RRR # 7010 1670 0000 7615 9646*
Karl S. Stern
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002

_____
S. Abraham Kuczaj, III

989025